UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JONI LASKEY, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 08-153-P-S |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff's condition had improved sufficiently to justify cessation of benefits as of November 30, 2004. I recommend that the decision of the commissioner be vacated and the case remanded for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1594(f), 416.994(b)(5)(i)-(vii); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that by decision dated November 24, 1992, the plaintiff was adjudicated disabled (the "comparison point decision," or "CPD"), Finding 1, Record at 14; at the time of the CPD, she had medically

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on January 16, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

determinable impairments of organic mental disorder, affective disorder, personality disorder, and a substance abuse disorder, *see* Finding 2, *id*.; as of November 30, 2004, she had medically determinable impairments of attention deficit hyperactivity disorder, cocaine dependence, degenerative disc disease, and osteoarthritis, Finding 4, *id*.; medical improvement had occurred as of November 30, 2004, Finding 6, *id*.; based on the impairments present as of November 30, 2004, she had the residual functional capacity ("RFC") for light exertion work, with a limitation to occasional climbing, stooping, kneeling, crouching, and crawling and a need to avoid frequent overhead work, vibratory work conditions, and uneven surfaces, Finding 9, *id*. at 16; that, as of November 30, 2004, considering her age (younger individual age 45 to 49), education (high school), work experience (transferability of job skills immaterial), and RFC, she was able to perform a significant number of jobs in the national economy, Findings 11-14, *id*. at 19-20; and that her disability therefore ended as of November 30, 2004, Finding 15, *id*. at 21.  The Appeals Council declined to review the decision, *id*. at 4-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

Termination of benefits is governed by 42 U.S.C. § 423(f), which provides in relevant part that benefits may be discontinued, *inter alia*, if there is substantial evidence to support

findings of (i) medical improvement related to an individual's ability to work and (ii) the ability of the individual to engage in substantial gainful activity. *Id.* The plaintiff's appeal implicates the second of these two bases for benefits cessation. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 9) at 1.

In assessing the plaintiff's ability to work, the administrative law judge reached the final step of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1594(f)(7)-(8), 404.1560(c), 416.994(b)(5)(vi)-(vii), 416.960(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff contends that the administrative law judge erred in adopting the RFC opinion of Disability Determination Services ("DDS") non-examining consultant Robert Hayes, D.O., over those of treating physician James F. Findlay, D.O., and examining consultants Robert N. Phelps Jr., M.D., and Richard Stockwell, D.O., and in relying upon flawed testimony of a vocational expert. *See* Statement of Errors at 3-9; Record at 80-84, 134-41, 242-56. On the strength of these errors, she seeks reversal of the instant unfavorable decision and remand for a new hearing. *See* Statement of Errors at 10. I agree that the errors in question were made and that they warrant reversal and remand.

## I. Discussion

A plaintiff seeking reversal and remand of a Social Security decision on the basis that an administrative law judge chose an RFC opinion of one expert over that of another, or others,

faces an uphill battle on appeal. As the First Circuit has observed, resolution of such conflicts is the job of the commissioner, not of the doctors or the court. *See, e.g.*, *Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). Yet occasionally the commissioner's resolution of such conflicts cannot be discerned to be supported by substantial evidence, necessitating reversal and remand for further proceedings.

### A. RFC Opinions of Record

As the plaintiff suggests, *see* Statement of Errors, a variety of experts addressed the subject of her physical RFC, rendering the following opinions:

1. The February 24, 2005, opinion of Dr. Phelps, an examining DDS consultant and fellow of the American Academy of Orthopedic Surgeons, that the plaintiff could occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, stand or walk for at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, bend, climb, balance, stoop, kneel, crouch, and crawl occasionally, was mildly limited in ability to push/pull with lower and upper extremities, and was moderately limited in ability to reach. *See* Record at 83. Dr. Phelps ascribed these limitations to back and neck pain with mild lumbar and cervical radiculopathies. *See id.* While he found on examination that the plaintiff had good or normal ranges of motion and strength, he noted that her left shoulder was slightly elevated, she had a slight left thoraco-lumbar scoliosis, and she exhibited pain with lumbar and cervical spine motion. *See id.* at 81-82. These RFC findings were consistent with an exertional capacity to perform sedentary work. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket

files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

2. The May 31, 2005, opinion of Dr. Hayes, a non-examining, non-testifying consultant, that the plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk with normal breaks for about six hours in an eight-hour workday, sit with normal breaks for about six hours in an eight-hour workday, had unlimited ability to push/pull, other than as shown for lifting/carrying, could occasionally climb, stoop, kneel, crouch, and crawl and frequently balance, and needed to avoid frequent overhead work, vibratory work environments, and uneven surfaces.  *See* Record at 135-38.  Dr. Hayes indicated that the severity or duration of the plaintiff's symptoms was disproportionate to the expected duration or severity on the basis of her medically determinable impairments and that her "psychological conditions may increase her perception of physical limitations."  *Id.* at 139.

Although Dr. Hayes summarized Dr. Phelps' findings, he omitted to check a box indicating that there was an examining source statement regarding the plaintiff's physical capacities in the file or to explain any significant differences between his findings and those of Dr. Phelps.  *See id.* at 140-41.  Dr. Hayes' findings were consistent with an exertional capacity to perform light work.  *See, e.g.,* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full

5

or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

        3.      The August 1, 2006, opinion of treating physician and orthopedic specialist Dr. Findlay, reiterated in a report dated December 18, 2006, that the plaintiff could lift and/or carry 10 pounds occasionally, lift and/or carry less than 10 pounds frequently, had no limits on standing, walking, or sitting, was limited in pushing and/or pulling with her upper extremities, could occasionally climb, balance, kneel, crouch, crawl, and stoop, and could only occasionally reach, with no overhead reaching, occasionally handle, and occasionally finger. *See* Record at 242-45, 253-56. Dr. Findlay ascribed these limitations to right subacromial impingement and osteoarthritis. *See id*. at 244, 255. He noted that all restrictions and limitations were based on musculoskeletal evaluation only. *See id*. at 245, 256. This RFC was consistent with an exertional capacity for sedentary work. *See, e.g*., 20 C.F.R. §§ 404.1567(a), 416.967(a).

        4.      The October 12, 2006, opinion of Dr. Stockwell, an examining DDS consultant, that the plaintiff could lift and/or carry up to 10 pounds occasionally and five pounds frequently, stand or walk up to eight hours in an eight-hour workday with normal breaks, sit for up to six hours in an eight-hour workday with normal breaks, frequently climb, balance, stoop, crouch, kneel, and crawl, and was limited in her ability to reach and push/pull. *See* Record at 249-52. Dr. Stockwell ascribed these limitations to upper neck-shoulder hypertonicity and pain. *See id*. at 250. He indicated that he found no objective evidence to support or deny the reaching limitation. *See id*. at 251. On examination, Dr. Stockwell noted no abnormal musculoskeletal,

strength, or gait findings. *See id.* at 247. The Stockwell RFC was consistent with an exertional capacity for sedentary work. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).[2]

### B. Medical Expert's Hearing Testimony

The Record also contains testimony at hearing of a medical expert, Dr. Webber. The plaintiff's hearing commenced on July 31, 2006, was continued to August 25, 2006, to afford Dr. Webber and the administrative law judge time to review more than 100 newly filed pages of medical records, and was continued again to January 5, 2007, after Dr. Webber indicated at the August hearing that he still possessed insufficient information to render an opinion as to whether Dr. Findlay's RFC opinion or that of Dr. Hayes was more reasonable. *See id.* at 290, 309, 353-58, 361, 363-66, 392. At the August hearing, Dr. Webber testified, in relevant part:

> I suspect [the plaintiff] does have cervical pain. Whether it's based on degenerative disc disease or recurrent muscle spasm or overuse syndrome of the right shoulder is unclear. There [were] concerns about subac[]romial impingement on the right shoulder and rotator cuff, but to my knowledge, no studies were done to help clarify those issues. And if she was using that right upper extremity repetitively in a work situation, she certainly could have developed an overuse syndrome. I just am not in a position to be able to clarify what's going on there.
>
> ***
>
> I don't recall seeing any radiological studies at all [that would support a diagnosis of cervical disc disease]. For a period of time in the early notes, I think of Dr. Findl[a]y, there were some physical findings that were suggestive of compression issues which may reflect compression of a nerve root. But later on after a period of time, the comment was that those findings had cleared, neurological findings had cleared. So this is again why I'm saying there are no ongoing consistent findings over a long period of time. That's why I can't say if it's basically a shoulder problem, ac[]romial joint problem, or a cervical spine problem.

---

[2] At oral argument, counsel for the commissioner argued that Drs. Findlay's and Stockwell's RFC opinions correlate to a reduced range of light work, rather than sedentary work as argued by the plaintiff, given their lack of finding of any restriction on the plaintiff's ability to stand or walk. *See* Record at 242, 249; 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). Counsel gains nothing by this argument. As he essentially acknowledged, Drs. Findlay and Stockwell did not find the plaintiff capable of a *full range* of light work. Their findings are consistent only with performance of the full range of sedentary work.

*Id*. at 345-46.

Dr. Webber stated that he disagreed with Dr. Hayes' finding that the plaintiff retained an unlimited ability to push and/or pull. *See id*. at 349, 352. However, because Dr. Webber indicated that he had insufficient information to assess which RFC opinion was more reasonable, the administrative law judge continued the hearing, observing: "[I]f you can't tell, I have [INAUDIBLE] obligation to re-contact Dr. Findl[a]y, which I will do. . . . And then I'm going to send her for a CE [consultative examination]." *Id*. at 358. The plaintiff was sent for a consultative examination with Dr. Stockwell. However, there is no indication that the administrative law judge recontacted Dr. Findlay. Neither Dr. Webber nor any other medical expert was present at the final hearing in January 2007. *See id*. at 290. At that hearing, the plaintiff's counsel submitted a copy of an x-ray report from Mercy Hospital in Portland dated December 19, 2006, revealing "[a]dvanced disc degeneration at C3-4, C4-5 and C5-6 and C6-7 with endplate hypertrophy and osteophyte formation." *Id*. at 258-59.

### C. Ultimate Choice of RFC Opinion

The administrative law judge rejected Dr. Findlay's RFC opinion on the basis that the clinical findings of record tended not to support Dr. Findlay's assessment of the degree of the plaintiff's impairment. *See id.* at 17. The administrative law judge observed that Dr. Webber had concluded that an examination of the plaintiff at Mercy Hospital on September 3, 2004, did not establish abnormal findings and that this was consistent with Dr. Phelps' findings on examination of subjective pain with no radiological findings, no evidence of nerve compromise, and no evidence of nerve effect. *See id*. He further noted that Dr. Webber had testified that Dr. Findlay's treatment notes reflected inconsistent findings over time, and that the plaintiff's

functional activities, including working as a courier and cab driver, tended to erode her credibility as to the extent of her impairment. *See id*.

The administrative law judge stated that he adopted Dr. Hayes' RFC assessment but gave no explanation for its adoption. *See id*. at 18. He summarized but did not analyze the RFC opinions of Drs. Phelps and Stockwell. *See id*. at 18-19.

### D.  Treatment of Treating Source

While an administrative law judge is free to decline to adopt an RFC opinion of a treating source, he or she must supply "good reasons" for doing so. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] your treating source's opinion"); *see also, e.g*., Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating-source opinion as to RFC but "must explain why the opinion was not adopted").

As the plaintiff suggests, *see* Statement of Errors at 8, the reason given for rejecting the Findlay opinion, that it was unsupported by the clinical findings of record, cannot be characterized as "good" in the circumstances. As the administrative law judge recognized at the August 2006 hearing, Dr. Webber's testimony did not support rejection of the Findlay opinion but rather further exploration, in the form of recontacting Dr. Findlay and/or submission of the plaintiff for additional work-up. *See* Record at 358; *see also, e.g*., 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when

9

the report from [that] source contains a conflict or ambiguity that must be resolved[.]"). Dr. Findlay was not recontacted. While the plaintiff was sent to a new DDS consultant, Dr. Stockwell, she also submitted a seemingly significant x-ray report that revealed advanced degeneration of several discs in her neck. *See* Record at 259. No treating, examining, or testifying expert was asked to opine upon the significance of that x-ray report, and the administrative law judge omitted any mention of it in his decision. In failing to supply the requisite good reason for rejecting a treating source's opinion and in ignoring material evidence, the administrative law judge erred. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted).[3]

### E. Adoption of Non-Examining Consultant's RFC Opinion

The plaintiff also persuasively argues that, for several reasons, Dr. Hayes' RFC opinion cannot serve as substantial evidence of the plaintiff's RFC. *See* Statement of Errors at 3-5; *see also, e.g., Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone

---

[3] In an attempt to defend the administrative law judge's handling of the Phelps, Findlay, and Stockwell RFC opinions, counsel for the commissioner detailed a number of asserted discrepancies between their opinions and their objective findings. While the administrative law judge did deem the Findlay RFC opinion inconsistent with clinical findings of record, he offered no rationale whatsoever for rejecting the Phelps and Stockwell RFC opinions. His decision cannot be salvaged by reliance on rationales unarticulated therein. *See, e.g., Federal Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397 (1974) ("[W]e cannot accept appellate counsel's *post hoc* rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.") (citations and internal quotation marks omitted); *Cagle v. Astrue,* 266 Fed. Appx. 788, 794 (10th Cir. 2008) (rejecting commissioner's "impermissible attempt to provide a *post hoc* rationale in support of the ALJ's decision").

constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

  First and foremost, in reaching his conclusion, Dr. Hayes did not have the benefit of material, later submitted evidence, including Dr. Findlay's later treatment notes and the December 2006 x-ray report, which might have altered his opinion that the plaintiff subjectively perceived herself to be in greater pain than the medical evidence would support. This alone foreclosed use of the Hayes opinion as substantial evidence of the plaintiff's RFC. *See, e.g., Alcantara v. Astrue*, 257 Fed. Appx. 333, 334 (1st Cir. 2007) ("As a non-examining psychologist, Musiker's opinion merited less *prima facie* credibility than treating and examining sources, and less credibility than more expert sources. Absent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion."). Secondly, while Dr. Hayes summarized Dr. Phelps' findings, he omitted to recognize and explain differences between his finding that the plaintiff was capable of light work and that of Dr. Phelps that she was capable only of sedentary work, *see* Record at 140, eroding the weight to which his opinion might otherwise have been entitled, *see, e.g.*, Social Security Ruling 96-6p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-6p"), at 130 ("[T]he opinions of State agency medical . . . consultants . . . can be given weight only insofar as they are supported by evidence in the case record, considering such factors as . . . the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided[.]"). Finally, while the administrative law judge explained his rejection of the Findlay RFC, he omitted any rationale for his adoption of the Hayes RFC. *See* Record at 18. This, too, was error. *See, e.g.*, SSR 96-6p at 130 ("Administrative law judges . . . are not bound by findings made by State agency or other

11

program physicians and psychologists, but they . . . must explain the weight given to the opinions in their decisions.").[4]

For all of these reasons, the administrative law judge's RFC finding is unsupported by substantial evidence of record.

### F. Adoption of Flawed Vocational Expert Testimony

The foregoing RFC errors might yet have been harmless had the administrative law judge supportably relied on testimony of a vocational expert present at the plaintiff's January 2007 hearing. Yet, as the plaintiff persuasively argues, he did not. *See* Statement of Errors at 8-9.

In finding the plaintiff capable of performing work existing in significant numbers in the national economy, the administrative law judge relied on the vocational expert's testimony that a person capable, *inter alia*, of lifting less than or equal to 10 pounds occasionally and five pounds frequently, standing and walking for eight hours in an eight-hour workday, and sitting for six hours in an eight-hour workday would be able to perform the job of ticket taker, Dictionary of Occupational Titles ("DOT") § 344.677-010, which the vocational expert described as "sedentary with [a] sit-stand option." *See* Record at 20, 296. While, in crafting his hypothetical question, the administrative law judge set forth the RFC findings of Dr. Stockwell, those findings comport in large part with those of Dr. Findlay. *See id*. at 296; *compare id*. at 242-44 *with id*. at 249-51.

---

[4] In seeking to salvage the administrative law judge's handling of the Hayes RFC opinion, counsel for the commissioner argued that (i) while the RFC opinions of Drs. Findlay, Phelps, and Stockwell are inconsistent with that of Dr. Hayes, their objective findings actually support the Hayes RFC opinion, (ii) the probative value of the December 2006 x-ray is attenuated with respect to the plaintiff's condition as of the relevant point in time, November 30, 2004, when her disability was found to have ceased, and (iii) the neck x-ray in any event sheds light only on the nature of the plaintiff's impairment, not her resultant functional limitations. Even assuming *arguendo* the merit of these points, they were not made by the administrative law judge and hence constitute an "impermissible attempt to provide a *post hoc* rationale in support of the ALJ's decision[.]" *Cagle,* 266 Fed. Appx. at 794. In any event, I am unpersuaded that expert review of the 2006 x-ray would have shed no light on the plaintiff's condition, including the credibility of her asserted functional limitations, as of the relevant time.

The vocational expert testified, and the administrative law judge found, that his description of the job comported with the DOT description. *See id.* at 20, 299. Yet, as the plaintiff points out, *see* Statement of Errors at 8-9, it does not. As an initial matter, while the vocational expert gave the DOT number as 344.677-010, the correct number is 344.667-010. *Compare* Record at 296, 302-03 *with* DOT §§ 344.667-010, 344.677-010. In any event, both of those jobs are listed as entailing light work, including exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently to move objects. *See* DOT §§ 344.667-010, 344.677-010. In the absence of recognition and explanation for the divergence from the DOT description, the administrative law judge's reliance on ability to perform the ticket taker job was misplaced. *See, e.g.*, Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 00-4p"), at 244 ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."). The administrative law judge's finding that the plaintiff was able to perform other work existing in significant numbers in the national economy accordingly is unsupported by substantial evidence.[5]

### III. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings not inconsistent herewith.

---

[5] The potentially outcome-determinative nature of the decision whether to accord the plaintiff a sedentary or light RFC is further illustrated by the plaintiff's accurate observation that a person whose medically determinable impairments limit her to the performance of sedentary work, who is age 50 or older, has a high school education or more that does not provide for direct entry into skilled work, and has either unskilled work experience or no transferable work skills, is deemed disabled. *See* Statement of Errors at 2; Rules 201.12, 201.14 of Table 1, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"). The plaintiff turned 50 on April 25, 2006. *See* Statement of Errors at 2.

13

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of January, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge